Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
### for the
### District of
### Division

Case No. _____

*(to be filled in by the Clerk's Office)*

**Sheriff Cooper**
_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

**Jasmyne R. Coffin**
_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

Jury Trial: *(check one)* ☑ Yes ☐ No

FILED
IN CLERKS OFFICE
2024 JUL 26 PM 1:46
U.S. DISTRICT COURT
DISTRICT OF MASS.

## COMPLAINT FOR A CIVIL CASE

**I.    The Parties to This Complaint**

**A.    The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if
needed.

| | |
|---|---|
| Name | Sherriff Cooper |
| Street Address | 950 High Street |
| City and County | Central Falls |
| State and Zip Code | Rhode Island 02863 |
| Telephone Number | 347 608 - 7198 |
| E-mail Address | Gail Sheriff @ Gmail.Com |

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation. For an individual defendant,
include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

Name — Jasmyne R. Coffin

Job or Title *(if known)* — Actress

Street Address — Unknown due to Protective order

City and County — " " " "        "

State and Zip Code — Massachusetts

Telephone Number — "        "        "    "        "

E-mail Address *(if known)* — "        "    "    "        "

**Defendant No. 2**

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**Defendant No. 3**

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**Defendant No. 4**

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

1) retaliation for Plaintiffs speech in violations of the First Amendment

2) Defamation of Character

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1.  The Plaintiff(s)

    a.  If the plaintiff is an individual
        The plaintiff, *(name)* _____, is a citizen of the
        State of *(name)* _____.

    b.  If the plaintiff is a corporation
        The plaintiff, *(name)* _____, is incorporated
        under the laws of the State of *(name)* _____,
        and has its principal place of business in the State of *(name)* _____
        _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.  The Defendant(s)

    a.  If the defendant is an individual
        The defendant, *(name)* _____, is a citizen of
        the State of *(name)* _____. Or is a citizen of
        *(foreign nation)* _____.

b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain):*

The Plaintiff seeks from the defendant $11,000,000.00 for the irreparable harm suffered by the defendant retaliation of the plaintiffs protected speech and for falsely accusing the plaintiff of crimes he did not commit

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1) The plaintiff engaged in protected speech when he requested Department of Children and Families to do a wellness check on the defendant out of concern for his child. The defendant retaliated by making false allegations to FBI and prosecutors that the plaintiff sex trafficked her causing the ongoing incarceration of the plaintiff

2) See attached complaint (cause of action 1, and cause of action 2

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

The Plaintiff seeks punitive money damages for his pain, and suffering, mental, and emotional anguish, loss of punitive damages for the destruction of his reputation, loss of familial connections with his three children and his mother, and grandmother, ongoing incarceration, the plaintiff was targeted by dishonest prosecutors, Deteriorating health, high blood pressure. The defendant is the cause of the plaintiffs continuing depression and anxiety, high cortisol levels, nightmares, and imbarrasement.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    06/20/2024

Signature of Plaintiff     _Herald Cooper_
Printed Name of Plaintiff  _Sherriff Cooper_

### B.     For Attorneys

Date of signing:    _____

Signature of Attorney      _____
Printed Name of Attorney   _____
Bar Number                 _____
Name of Law Firm           _____
Street Address             _____
State and Zip Code         _____
Telephone Number           _____
E-mail Address             _____

## COMPLAINT IN A CIVIL ACTION

### INTRODUCTORY STATEMENT

**1.** The plaintiff in prose capacity submits an action for damages sustained by citizens of the United States against a United States citizen of Boston Massachusetts who violated a right secured to the plaintiff under the United States Constitution; by retaliating against the plaintiff for engaging in speech protected by the First Amendment; by falsely accusing the plaintiff of crimes the plaintiff did not commit, framing the plaintiff for crimes he did not commit, defaming the plaintiff's character which brought defamation to his character.

### JURISDICTION

**2.** This court has Jurisdiction to entertain this complaint under the Title **28 U.S.C. section 1331(a)** which states that the District Court shall have original Jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States.

### PARTIES

**3.** Plaintiff Sherriff Cooper (herein referred to as "plaintiff") is a resident of New York and at  times relevant to this complaint was a resident of East Orange New Jersey 50 S Arlington ave apt 10, and a

citizen of the United States, and is currently housed at Donald W. Wyatt Detention Facility at 950 High street Central Falls, Rhode Island 02863.

4. At the times relevant to this complaint Jasmyne Coffin (herein referred to as  Defendant) was residing in Massachusetts, and was acting in her individual capacity, and through her individual capacity did violate the plaintiff's constitutional rights to Freedom Of Speech pursuant to the First Amendment and she violated the plaintiffs Fourteenth Amendment Constitutional rights, and She is sued in her individual capacity.

## FIRST CAUSE OF ACTION

## COUNT 1: THE DEFENDANT MADE DEFAMATORY ALLEGATIONS FALSELY ACCUSING THE PLAINTIFF OF CRIMES HE DID NOT COMMIT IN RETALIATION OF PLAINTIFF ENGAGING IN PROTECTED SPEECH IN VIOLATION OF THE FIRST AMENDMENT AND THE FOURTEENTH AMENDMENT OF THE CONSTITUTION

1. **5.** On June 2020 the plaintiff Mr. Sherriff Cooper made a complaint to the Department of Children and Families (DCF) requesting a wellness check on the child that he shares with the defendant out of concern for the child's safety. The plaintiff texted the defendant, and told her that a wellness check was enacted by the plaintiff, and that DCF would be checking on her. On or about June 21 2020  the defendant was visited by DCF, and DCF opened up a case on Ms. Coffin based on the call made by the   plaintiff expressing concerns.  Ms. Coffin retaliated by making false accusations to My Life My Choice (MLMC) Human Traffic advocacy organization, FBI, and Federal prosecutors alleging that the plaintiff violently sex trafficked her as a minor by posting advertisements of her on the website BackPage.com; causing the plaintiff to become a target of law enforcement, initiating a  10 month Federal investigation, and leading to the incarceration of

2

the plaintiff on July 7 2021. The plaintiff submits that the defendant violated his constitutional

Rights by falsely accusing him of crimes he did not commit in retaliation of the plaintiff engaging

in protected speech . The defendant admitted to making defamatory statements about the plaintiff

for the reason being that the plaintiff made a call to DCF; which the plaintiff had all rights

guaranteed by the First Amendment to request  that DCF check on the welfare of his child. The

defendant got in touch with her human trafficking advocate Andrea (last name unknown) and The

defendant told Andrea " he crossed the line calling DCF trying to get my baby taken" "I need you

to say you seen what I was going through" Andrea responded by saying "I cant come lie for you"

the defendant told Andrea "I wasn't gonna say anything but he called DCF".


### SECOND CAUSE OF ACTION

### COUNT 2: THE DEFENDANT ABUSED LEGAL PROCESS AND MANUFACTURED EVIDENCE  TO FRAME THE PLAINTIFF FOR A CRIME HE DIDN'T COMMIT JUST TO GET A STRATEGIC ADVANTAGE IN CUSTODY DISPUTES.

**6.** . On or about  October 2020, the defendant sought out law enforcement on her own volition, and gave

law enforcement  manufactured   evidence of  prostitution related text messages that the defendant

generated in New York to frame the plaintiff for false sex trafficking crimes the defendant alleges took

place in the state of Massachusetts from February 2018 through June 1 2018,  by using her own personal

messages from a fraud scheme the defendant was operating in New York on June 13, 2018 through June

22, 2018. The defendant's scheme in New York consisted of the defendant defrauding men that she would

meet on dating websites  into believing that she would meet with them only if the men send her electronic

money deposits upfront. Then once the person would send the defendant a deposit, the defendant would

keep the money, and never meet up with the patrons, or give a location for the patrons to meet up with

her.  The defendant purposely and intentionally gave this evidence to FBI, and Federal prosecutors, to be

planted as falsified sex trafficking evidence in Massachusetts to induce law enforcement to investigate and bring false charges against the plaintiff for purposes of gaining an unfair advantage over the plaintiff in future custody disputes. The defendant used messages that were generated from this scheme in New York on June 13, 2018 through June 22, 2018 to frame the plaintiff for crimes of posting prostitution advertisements of the defendant on Back Page in Boston Massachusetts.

## DAMAGES

**7.** The plaintiff seeks punitive damages in the amount of $11,000,000.00 for the mental, and emotional anguish caused by the defendants acts. Damages for pain, and suffering, the loss of familial connections with his three children, and his mother. The ongoing incarceration, the deteriorating health high blood pressure, high cortisol levels, destruction of his reputation caused by the defendants defamatory false allegation, depression, and anxiety, nightmares, embarrassment, the defendant caused the plaintiff to be targeted by dishonest prosecutors. The defendants false defamatory remarks caused the plaintiff to be prejudiced by jail staff, fellow inmates, and caused childhood friends to turn their back on him.

## FACTUAL BACKGROUND

8. From 2017 to 2020 the plaintiff was in a relationship with the defendant; who is the mother of the plaintiffs youngest child. The plaintiff now 37 and the defendant 23 share a child in common. The plaintiff born, and raised in the Bronx New York met the defendant; who is from Massachusetts in April 2017 when the plaintiff moved down to Massachusetts temporarily for an employment opportunity. While in Massachusetts 2017, the plaintiff began working a security job with Securitas INC. Securitas stationed the plaintiff at a women's shelter called St Mary's where the defendant was a resident, and at the time pregnant with her first child. In July 2017 the defendant gave birth to her first child. After giving birth to her first child the defendant moved out of the St Mary's Women's shelter, and back into her

4

mother Angela Coffins home in Lynn Massachusetts.. The defendant and the plaintiff at this time; in an age discrepant but legal relationship would spend nights together as a couple at the home of Angela Coffin. During this time in Angela's home 2017, the defendant became violent with the plaintiff and the plaintiff witnessed the defendant violent with her mother Angela Coffin. On one occasion Angela asked the defendant not to have the plaintiff spend so many nights over because the building management may say something about so many people sleeping in the apartment. The defendant in retaliation wrote a profanity riddled letter with threats to her mother, then posted the letter to the wall with a knife stuck through it where her mother could find it. The plaintiff during this time lived in Boston at his Aunt Alicia Bishops home, and would spend nights at the defendants mothers home with the defendant in Lynn Massachusetts. On or about September 2017 the plaintiff found out that the defendant was cheating on him with another 30 year old man, and opt to take his belonging's, and leave the defendant's home. To stop the plaintiff from leaving; the defendant hid all the plaintiff's important documents like his drivers license, his social security card, and car keys to prevent the plaintiff from leaving. The plaintiff had to get an escort the Lynn police to assist him in retrieving his belonging's from the defendant in order to get away from the defendant, and avoid a domestic dispute. The police escorted the plaintiff to the defendants apartment, demanded the defendant give the plaintiff all of his belongings then the the plaintiff, and the defendant went on a break from each other. During this break in September 2017 the plaintiff went to New York to see his children, and his mother for approximately a week on or about September 2017. The plaintiff returned back to Massachusetts, and ended the break with the defendant. The first day back with the defendant; the defendant's child was removed from her custody by DCF for neglect, and abuse. The defendant was then placed involuntarily into a psychiatric ward for two to three months. During this time the plaintiff continued to be support for the defendant, and offered to assist the defendant, and father of her child James Cabral in getting their son from DCF custody. On or about December 2017 the defendant was released from the the Psychiatric ward, and placed in a program for young mothers under the stipulation that the defendant remain on anti psychotics, and complete the program to regain custody

of her child. During the defendants stay at the program the defendant refused to follow the rules. The defendant continued to rack up disciplinary actions, smoking in the house, getting into arguments with the other residents in the house, and continuing her relationship with the plaintiff. The (DCF) began to move towards giving  custody of the defendants first child to the father of the child James Cabral, and not the defendant Jasmyne Coffin. When the defendant learned of this, the defendant left from the program on or about February 2018. During February 2018 the defendant came to the plaintiffs family home in Boston, and was told that she could not stay. The plaintiff left and stayed with people unknown, but would use the plaintiff for money, and use others unknown for money, and shelter. The plaintiff in February 2018 attempted to get the defendant a place to stay with other family around the Boston area, and the plaintiff's family did not like the defendants personality, or the way they witnessed the defendants treatment of the plaintiff resulting in a denial of the defendants lodging. The plaintiff had plans to move back to New York,  and the defendant requested to move with the plaintiff  back to his hometown where he had employment ready for himself, and a place to live at his mothers house until he get an apartment. On or about June 1st or June 2nd 2018, the plaintiff and the defendant moved to New York where the two stayed at the plaintiffs mothers home with the plaintiffs two children. During this time summer of 2018 the plaintiff was working at GCA charter school as a custodian while the defendant would stay at his mother's home. The plaintiffs mother told the plaintiff to stay at his Grandmother Doris Walker's home located in the same neighborhood because the plaintiffs grandmother lived there alone and had more room. After a short time staying at the plaintiffs Grand mothers home, the defendant was told by the plaintiffs Grandmother that she had to leave due to  the disrespect the defendant showed the plaintiffs Grandmother. The defendant would scream in the plaintiffs grandmothers home, not clean up after herself, smoking in the house, and the plaintiff, and the defendant would argue very loud. The arguments resulted from text messages the plaintiff would find in the defendants phone that insinuated the defendant was having affairs with other men. The defendants arguments consisted of her wanting the plaintiff to buy excessive amounts of marijuana and order takeout food every single day. The defendant wanted material

6

things like designer clothes, and new smartphones. Whenever the plaintiff could not afford something the defendant wanted, the defendant would threaten the plaintiff with getting what she needs from somebody else. The defendant told the plaintiff " if you don't do it I can get the next (expletive) to do it" The defendant told the plaintiff that she knows how to escort, and that she has been doing it since she was 14 years old. The plaintiff told the defendant that he was not okay with her sleeping with other men. The plaintiff told the defendant about his sons mother Simone Rosemore who works at strip clubs, and worked at a club called JR'S Cabaret where she  does not have sex with people to make money. The discrepancy with the defendant working at the club was that the club require the girls to be 18 years old, and the defendant was still a few months away from 18. A few weeks later; while the plaintiff was at work, the defendant acquired a stolen ID, and used the ID to get into the strip club called JR's Cabaret that the plaintiff told her about on or about the end of July, or  beginning of August 2018. During the defendants time working at  JR'S Cabaret, the two fought over the plaintiffs jealousy about the defendants time she spent working. The plaintiff was seeing text messages in the defendants phone that suggest she was prostituting and having affairs with the patrons and the owner of the club. The plaintiff would argue with the defendant about spending more time home instead of the club. The defendant told the plaintiff that the messages he was seeing in her phone were messages of her telling  the customers what they wanted to hear  in order to get them to keep spending money on lap dances. The defendant told the plaintiff that while they were at the plaintiffs grandmother  Doris Walker's home in the Bronx New York June 2018; she would do the same thing on dating websites by getting people to send her electronic deposits on cashapp and paypal by making them believe she would meet up with them to engage in prostitution; while having no intention on ever meeting with them. On or about October 2018 the plaintiff, and the defendant moved into a rooming house in the Bronx where the defendant caused both her, and the plaintiff to be kicked out on or about February 2019 do to her disruptive behavior, and smoking in the house. The plaintiff, and the defendant moved back to the plaintiffs mothers home. The defendant worked at the strip Club JR'S Cabaret until March 2019, and stopped when she became pregnant with

7

the plaintiffs child. During this time March 2019 the plaintiff worked for a different security company called G4S Security Solutions. The plaintiff continued supporting the defendant . During this time at the plaintiff's mother's home, the defendant, and the plaintiff were very disruptive, and verbally abusive towards each other, and the defendant was physically violent with the plaintiff in front of the plaintiffs children, and his mother. On or about June 6 2019 the plaintiff worked a 16 hour shift at his security Job, and when he returned home; the defendant immediately began fighting him because she did not believe the plaintiff worked a 16 hour shift. The defendant began breaking dishes throwing clothes around the house slamming doors and physically attacking the plaintiff. The plaintiff had to physically restrain the defendants arms from breaking things and hitting the plaintiff. The defendant accused the plaintiff of choking her when he restrained her saying "you putt your hands on me". The plaintiffs mother intervened and told the defendant that she had to find somewhere else to live. The defendant called the plaintiffs aunt Alicia Bishop, and asked if she can  return to Boston to  live with her for a while until she gets on her feet. Alicia Bishop; knowing that the defendant was pregnant with the plaintiff's child allowed the defendant to come and live with her. The plaintiffs mother went into work that day, and when she returned, purchased a bus ticket for the defendant to go back to Boston Massachusetts. After the defendants return to Boston she stayed at the plaintiffs aunts home, and during that time she began talking to the plaintiff on the phone agreeing to work on their relationship while they spend time apart. The defendant would request money from the plaintiff, via western Union and electronic payments while keeping the plaintiff under the impression that they were working to get back together. The whole time that the defendant kept the plaintiff under the impression that they would get back together; the defendant was already in another romantic relationship with a 55 year old man named Jonathan Larson, and living with Jonathan Larson in Lowell Massachusetts. On October 17 2019 the defendant gave birth to the plaintiffs son. The plaintiff and the defendant began disputing among themselves about custody of the child. The plaintiff told the defendant that he would take legal action if she kept his son from him. The defendant threatened the plaintiff that she would take legal actions if he persued any custody or rights for his son. The defendant

8

responded with a photo via text message  threatening to blackmail the plaintiff with a photo of an object

that the plaintiff purchased for the defendant back in 2019. The plaintiff text back "I brought that for you"

"you snitching" "I trusted you". The defendant began planting messages falsely accusing the defendant

of domestic violence in the past. The plaintiff would text back "you are delusional" "your version is  not

what happened". "but you kept fighting me" The defendant was sending text messages in her phone in

anticipation of future of court litigation. A week later on or about November 2019 the defendant contacted

the plaintiff and requested the plaintiff to come pick her up from Lowell Massachusetts; claiming that

John Larson got violent with her in front of the Baby. The plaintiff, and a friend of the family, Otis Reese,

obtained a U-Haul from New York, and drove down to Massachusetts to pick the defendant, and the baby

up. The defendant requested that the plaintiff come to pick her up while John Larson was at work because

she alleges he was violent. The plaintiff and the defendant drove home to the plaintiffs new apartment in

East Orange New Jersey. From November 2019 through June 2020 the plaintiff, and the defendant lived

at their new apartment in New Jersey. During this time the plaintiff and the defendant began getting along

but when COVID 19 struck in March 2020 the plaintiff was laid off, and the couple and their baby were

forced to quarantine. During quarantine the plaintiff and the defendant began arguing about the

defendants care for the child. The defendant was chain smoking marijuana, and cigarettes, and drinking

while breast feeding the infant. The defendant dropped the infant child on three different occasions,

causing swelling to the infants head, and continued to engage in unsafe measures when it came to the

child. Constant arguments erupted about the care of the baby, and the defendant's constant disruptive

behavior. One time on or about May 2020 the plaintiff told the defendant she has to stop sleeping in the

bed with the baby, and to stop smoking and breast feeding the baby, causing the defendant to launch a

war on the apartment. The defendant began trashing the home breaking dishes kicking doors and hitting

the defendant. The defendant noticed the plaintiff recording with his phone, and pulled out a pair of giant

medal scissors threatening to stab the plaintiff if he did not turn over the phone containing the evidence

he recorded. The last fight in on or about June 16 2020 The plaintiff was sleeping and the defendant

9

wanted the plaintiff to get up. The plaintiff said he needs to sleep. The defendant pulled the covers off the plaintiff, and the plaintiff put the bed sheets back over himself in an attempt to ignore the defendant. After 4 times back and forth the plaintiff jumped up, and screamed profanity at the defendant in his frustration saying "leave me alone you expletitive". The defendant claimed the plaintiff spit on her saying "you spit on me your breath stinks" "im calling the police". The police were called by the defendant and she falsely accused the plaintiff of purposely spitting on her in revenge for the plaintiff recording her violence, and capturing her in her true colors during a fight just a couple of weeks ago. The plaintiff was arrested and booked for 3 to 4 hours by East Orange police, and returned home where the defendant was still home with the baby. The defendant packed up her belongings that day, and called her aunt Melody Owens from Massachusetts asking her aunt to stay in her home due to not getting along with the plaintiff. The defendant had a man downstairs with a orange pick up truck who helped her to the train station with the baby, and the plaintiff helped the defendant downstairs where he shook the mans hand, and told him to drive safe with his baby. The plaintiff, and the defendant separated cordially. The plaintiff, and the defendant agreed to make arrangements for the plaintiff to see his child, and the defendant told the plaintiff "we will work on all the things we couldn't together". When the defendant reached her destination in Massachusetts she contacted the plaintiff, and let him know that she arrived safely with the baby. On or about June 19 the plaintiff requested a face time call to see the baby, and let the baby see his face. The defendant put the baby on the Face time call. When the plaintiff asked to see the baby's sleeping quarters the defendant hung the phone up. The plaintiff knew something wasn't rite with the baby's sleeping quarters. The plaintiff tried to wait a few days and let the defendant reach out to him, and when the plaintiff did not hear from the defendant the plaintiff called DCF requesting a safety check on the defendant and his child. The plaintiff then texted the plaintiff, and told the plaintiff "be ready" "DCF is coming to check on the baby". After DCF did their safety check DCF decided to open the defendant's case back up due to her already having a past of neglect and abuse from her first child.. The defendant began retaliating by making false allegations of being sex trafficked by the plaintiff as a minor, and false

allegations that she had to escape from the plaintiff on the day she had him arrested for allegedly spitting. The defendant got in touch with her human trafficking advocate Andrea who she known before she met the plaintiff, and tried to conspire with Andrea to make false allegations on the defendant for calling DCF. The defendant told Andrea " he crossed the line trying to get my baby taken" "I need you to say you seen what I was going through" Andrea responded by saying "I cant come lie for you" the defendant told Andrea "I wasn't gonna say anything but he called DCF". On or about October the defendant begin meeting with the FBI where she falsely accused the plaintiff of posting her on the website BackPage.com with the phone number (617) 858-9804 from February 2018 through April 2018. The defendant claimed that she was prostituted exclusively with Back Page, and when Back Page shut down, the defendant alleges that she continued to see her alleged repeat clients from April through June. The defendant turned over false evidence to the FBI containing text threads from her scam in the Bronx New York where she would bamboozle people on dating websites into thinking she would meet with them if they send her money electronically, then she would never meet with them. The defendant framed the plaintiff with the text messages by telling the FBI, and Federal prosecutors that the text messages from a smartphone app in her own phone were the alleged Back Page customers that were generated from BackPage.com advertisements in Massachusetts that  she claims the plaintiff allegedly forced her to engage in prostitution with. A federal prosecutor and the FBI took the text messages from the app that the defendant framed the plaintiff with to a Federal Grand Jury and told a Grand Jury that the text messages were prostitution in Boston Massachusetts that the defendant was forced to engaged in by the plaintiff. On July 7 2021 the plaintiff was arrested at his home in the Bronx New York where he lived with his mother , and his two children. The plaintiff was denied bail, and expedited to Massachusetts Wyatt detention facility where he has been in aliving nightmare for for 2 years, and 11 months. On or about June 2022 the plaintiff proceeded with his case pro se where he was given discovery of the defendants phone extraction where he learned of the defendant true motive for the false allegation revealing that it was a

retaliation for him calling DCF saying **"HE CROSSED THE LINE TRYING TO GET MY BABY TAKEN"**

Respectfully Submitted
SHERRIFF COOPER
JUNE 20 2024

12